Case 22-3840, USA v. Alejandro Daniel Jr., argument not to exceed 15 minutes per side. Mr. Schad, you may proceed for the appellant. Thank you. Good morning, your honors. May it please the court. I'm here this morning representing Alejandro Daniel and I've requested three minutes for rebuttal, if I may. All right. Thank you. Your honors, the parties agree on a lot of the facts in the law that are pertinent to this appeal. We agree that at the time the officer seized the vehicle and took it to the police station, that they needed to have probable cause to seize the vehicle. We also agree that when the state magistrate judge issued the warrant, that the state magistrate judge needed to have probable cause to issue the warrant. We also agree on the place to be searched will have either contraband or evidence of a crime in it. And we also agree on the facts relating to what I think is the crux of this appeal, which is that prior to the time the officer seized and took the vehicle to the police station, they broke into the vehicle and they searched it for 10 minutes and they found nothing incriminating. So we agree to all that. The only thing that we disagree about is the import of those facts to the subsequent probable cause analysis. And we would submit that the probable cause was lacking after they got done with that search, both as to their determination that they needed to seize and take the vehicle to the police station, and also that they had a duty to disclose that search and that they came up empty to the state magistrate judge because that would have completely changed the probable cause determination. I don't know about completely. I mean, do you have a case that says the officer's failure to uncover drugs in a search of that duration has some significant probative effect upon the likelihood? I mean, you know, because you know, I mean, just like in this case, there's these compartments. Sometimes you have to take the dashboard off the vehicle. So is there authority for the proposition that this is something that's going to outweigh the nine things that did suggest pretty serious illicit activity in this case? I have no specific case on point that says a 10 minute search coming up empty then completely negates probable cause. And I'm not saying changes the analysis because so now you don't have and it's and to be fair to the government, your honor said nine things. I believe it's it's 12 things. And the government had like six. But but it does, you know, it does change the weight. And I think that's the problem here. And in, you know, had they disclosed the this search to the state magistrate judge, and had the state magistrate judge had it before it, and then still made the probable cause determination on those other six, nine, twelve things, then I'd have a much different argument right now. Let me ask you this to maybe narrow this. Absent the search factor, the fruitless search, if you abstract or if you take that away and they come with everything else, would you agree that everything else equals probable cause? So in our brief, we say that it does not, that the balance of the 12 items or six items or nine items don't add up to probable cause in this case. But for purposes of the argument today, I think, again, as I positioned it in my initial opening, the crux of this really is that additional fact and how that additional fact plays into the probable cause analysis. And I would say that, you know, my esteemed colleague says that it doesn't weigh in at all to the analysis. That's their position is that it has no value in either the police officer's determination of continuing probable cause, or it would have had no value to the state magistrate judge. And I would submit that just can't be. And there's a couple of reasons for that. First, you know, when I first read the case and I heard it was a 10-minute search, you know, my very first thought was that's a cursory search and we've seen all these cases where it goes on for hours and, you know, we've got a lot of experience in that case. But 10 minutes is a long time for a confined space. And it's as long as the some unusual compartment. I mean, it's a long time for sort of the ordinary, you know, spaces within a vehicle. But if they've been using power tools to put something in there, it might not be that long a time. And I'm going to say this, and I'm not going to be able to give you a case on point, but we've seen cases where that is the case and the police officer says, okay, well, we saw that there were screws that looked brand new or that they'd been, looked like they'd been changed and that gave us an idea that there might have been a secret compartment here or there. And we've seen those cases and that does make some sense. But here, they found nothing incriminating whatsoever. There was no indication that there was a secret compartment on the search. Well, it's just, it was better than some of the other cases. But at some point, probable cause wanes or dissipates. And we know that from the case law. And so in this case, when you had, and I would submit that the balance of the points that the police relied upon to show probable cause rose to the level of a hunch. It did not raise to the level of probable cause. And so you have, okay, they came from Mexico a week before in that car. She's driving his car. They're following in a rental. She says it's probably an illicit trip. I mean, we're well down the football field. There is something not kosher going on. I think that is absolutely fair to say. Driving all the way across the country for. Right. And it certainly warranted further investigation. It didn't warrant a violation of the Fourth Amendment in this case. Are you conceding that the initial stop was appropriate? The car had come from Mexico. There had been a border crossing in and of itself. Those things don't add up to any reasonable suspicion of a crime having been committed. And that launched, of course, the surveillance and then the initial search of the automobile, which there might be some question as to whether that was justified. But it sounds as though you might be suggesting that you don't have an objection to that. Well, if by initial stop, your honor is talking about the initial confrontation that the police officer had with Mr. Daniel when he was walking down the street? Well, yeah. And also the surveillance and leading up to that and all. I mean, what was the basis for all that other than the man had a prior personal use of marijuana conviction, but there was no indication of law breaking as of that time. They pulled into that motel and that was it. I mean, the fact that they had been to Mexico, why does that give rise to an automobile search? So I would agree with you, your honor, that certainly from my defense counsel perspective, the entire start in the investigation bothers me. They were actually sitting on the hotel. They hadn't even identified these particular persons as being involved in any criminal activity, but they knew that the hotel contained on a regular basis criminal activity. They saw a looking at that plate and seeing what happened and seeing who rented there. And so I don't see anything in a record about a criminal activity at the hotel. No, the only indication of that is one of the officers made a bald-faced statement that there's criminal activity associated with the hotel, but there's no basis for that statement anywhere in the record. Well, I would agree with you, your honor. And as a matter of fact, I think Officer Leslie at two different or three different points in their testimony at the motion to express hearing specifically states, I think it's on pages 115 and 117, that at certain points there was no evidence of criminal activity. And that includes up to the point where these three individuals leave in two separate cars and leave the hotel. So there is, again, we know at the time they leave the hotel, we know that they're in this hotel that has this reputation. We know that they had recently been to Mexico, and we know... This was a reputable hotel. Where is it established that this hotel has a reputation for criminality? I mean, you sound like you're arguing again. The only evidence that we have on that is the Officer Leslie's one sentence in the search warrant application that says that it's a known area for drug trafficking and money laundering. And so that's the only thing we have to go on. I'm not disagreeing with you, your honor. Well, I'm making an inquiry. I'm not trying to assert the truth of what I'm asking you about. I agree with everything you said. You seem to be siding with the government on these questions. Well, I think a fair reading of the record is that officers could have identified them as worthy of further investigation where they were at and were able to then follow them to downtown Dayton. I think that's the only way that I can read the record. Your time is expiring. Could I ask you about the second search, the warranted search? Is there a case that would be supportive of your argument that Officer Leslie was obligated to mention in the affidavit that no illegal substances or items were found in the initial search? I know that the affidavit says something to the effect we searched the vehicle and we searched the hotel room where we found a small amount of marijuana. Yes. And I think your argument is that there was an obligation to notify the magistrate that nothing was found, nothing illegal was found in the vehicle from the 10-minute search. Is there a case that supports that obligation? I think your argument is that therefore it's really a material omission and the officer should not rely on it. I see my time is expiring if I can answer the question. I cite to the case of United States v. Green and in that case the court says that if there's a warrant issued and police officer finds information that serves to dissipate probable cause, there is a duty to go back to the magistrate and inform them of that prior to its execution. So if in fact a police officer knows information that dissipates probable cause, this court has said that information is required to be given to the magistrate judge. Okay. And what is the effect here of that not being given to the magistrate judge? Well, the effect is that the magistrate judge wasn't able to make a fair assessment of whether probable cause existed at the time the warrant was executed, issued. Okay. Thank you. I know you're out of time, but do you have anything to say about a possible good faith argument? Well, I believe that a lot of my argument actually goes into good faith because if there's a material omission or false information that's contained in the warrant application process itself, that is one of the four Leon exceptions that says that you can't rely on that the omission was a material omission, then good faith is out the door. All right. Thank you. Thank you, your honor. Good morning. Good morning. May it please the court, Kevin Kohler on behalf of the United States. This court should affirm the district court's decision denying defendant's motion to suppress the three kilograms of heroin and fentanyl hidden in the aftermarket compartment of the dashboard of the Dodge Charger were found and seized pursuant to a lawfully issued state search warrant. Search warrant set forth verifiable facts that established a substantial basis to believe the Charger was being used to traffic drugs. And in this case, I think it's important to remember, the officers were acting reasonably at all times. They were reasonably relying on that state search warrant and as such would be entitled to the good faith exception to the exclusionary rule. Just to pick up on where Mr. Shadd left off, as you just heard, I mean, he says that we should impute, I guess, to the searching officers, the omission of, I suppose, Officer Leslie in, you know, omitting to tell the magistrate about this 10 minute search that didn't yield anything. I guess, what's your response to that? And kind of, is there the same identity of officers who were involved in the omission and in the search or are there officers who, you know, were not part of that omission? I think there are two responses to that. And first is, I don't think there was any omission here, Your Honor. The affidavit says, paragraph R, I believe, mentions she consented to a search. They went, they took her then to do the consent search and then paragraph T says, after the consent search, they went and searched the hotel rooms. I think the only natural reading of that is that they didn't find anything in the car. They went to the... to the search of the vehicle. That is a dispute. I don't think it's an issue the court needs to reach here and that's because under the automobile exception, the same probable cause that existed at the time of the search warrant, which existed at the time of the seizure, and existed at the time of the consent search. So the government's position is she did have actual and apparent consent, but at that point, the officers had probable cause and so we don't actually have to reach the consent search. Because the search didn't yield anything. The search didn't yield anything. There's no fruit of that tree. Yeah, and the very fact that the officers were going to the magistrate afterwards and specifically seeking a search warrant to search in the concealed locations of the vehicle, I think the only reasonable reading of the affidavit is that they didn't find anything in that limited 10-minute search. But even if there was an omission, that omission doesn't matter unless that initial search was as broad or as intricate as the search warrant or the search that was sought under the search warrant. And that's the Bowling case, which is very similar to here. There was a consent search for about 15 minutes, so actually longer than here. That search was not disclosed to the issuing magistrate at all. And the court said, well, it wasn't disclosed at all. So if it's not disclosed at all, we have to look at what a hypothetical neutral magistrate would have done. And the only way that probable cause is dissipated is if the first search and the second search are going to be coextensive. If you're looking for a broader, more invasive, more intricate search, then that initial 10-minute search is not dissipating probable cause. Here, because that initial... Actually, Bowling was a lot different, wasn't it? Because there was a search of a trailer and not a vehicle, and the defendant in Bowling actually consented to the initial search of a trailer. The search was 15 minutes, not 10 minutes as here. There are a lot of factual distinctions. There are some factual distinctions. I agree with that, Your Honor. But I think the broader point of Bowling, which is that an initial search only dissipates probable cause for a subsequent search that could invalidate a duly issued search warrant if the two searches are coextensive. And here we know the searches are not coextensive. The first search was a 10-minute search. They're not taking apart the car. The subsequent search was for all the concealed locations. And this was a case where the drugs were not in plain sight. They were not just in the trunk. They were secured in a hidden aftermarket component that was actually in the dashboard. And in this case, it makes sense. This is what we want the officers to do. They have consent for initial limited search. They have probable cause to search it on the street. They do an initial limited search. It's only 10 minutes. They think, we still have probable cause. All these 10, these 12, these 15 factors are still there. Just because there was no contraband in the trunk or in the back seat doesn't mean our probable cause has dissipated. At that point, they made a prudent decision. They went to the state court judge. They disclosed the fact that they had done a consent search of the car, of the hotel rooms. They disclosed what they found in those three consent searches, which was just the user amount of marijuana. The state court judge had all these facts before her when she issued the warrant. And because those facts are before her, this is a slightly different case than Bowling because the officers are entitled to rely on the state court warrant, and the state court warrant gets due deference from this court. I mean, they disclosed the fact of the search in paragraphs R and T. The idea that they're now sort of, you know, barred from relying upon the resultant warrant in good faith, I don't know. Mr. Shad can speak to that, but I mean, they seem pretty candid in their recitation here. Yeah, and I think that, I agree with that, Your Honor, and I agree with a different rule would create practical difficulties. If you could have a limited consent search that then dissipates probable cause for future searches, that has two negative implications. One is defendants could always just say, hey, I'll consent to this limited search, knowing that, well, now your hands are tied, officers, and you can't go get a search warrant. So that's one negative implication. The other negative implication is a rule that a limited initial search dissipates kind of probable cause for a broader search would incentivize law most intricate search. I'm not quite following you now. The search that was consented to was not denominated to be a limited search. It was just a search that could have, there was no limitations placed on the purported consent. I agree. So I meant limited, not in the limited consent to the legal term, but a consent to a search that ended up just being a limited consent search. And mine was more a hypothetical, how this could incentivize suspects but also officers to engage in behavior that may not be kind of what we would want or what would be the most reasonable. Judge Clay, you mentioned some of the initial concerns about the initial investigation. The government's position is not, is at that initial point where they're surveilling the hotel, they don't have probable cause, they don't have reasonable suspicion, but they do have a basis to continue the investigation. And if they had seized or detained Daniel or the car at the hotel, I don't think we'd be here. I think that would be a problem. It's only, they pursue the investigation, it's only when the investigation ripens after they, after Daniel and Iniguez engage in kind of counter surveillance behavior, after Daniel, you know, makes the false statements to the police, and after Iniguez tells, the co-conspirator in the scheme says, I think this is illicit. It's only at that point that the investigation ripens into probable cause. If there are no further questions, we rest on the brief. All right, thank you. Any rebuttal? Thank you, Your Honor. You know, what would you, what case would you point to us as like most supportive of your argument that probable cause did not ripen for that initial search? Given that Iniguez said that, you know, I think there's something illicit going on and that kind of stuff. Yeah, so I don't have, I don't think I can. What would be the, I mean, closest case? Yeah, I don't think I can point you to a specific case that, that gets you there, because probable cause is, is such a fact-driven, you know, this way is this way and this way is that way that, you know, it's why there's that deference to the, to the probable cause determination, correct? But, you know, the, the, we argue that it doesn't meet the standard, but that's not what we have to do to win this particular case. And, you know, and I would disagree with my colleague on a, on a couple of different points. One, I don't think the co-extant in order to, in order for it not to apply. And I think a great example of that would be, you know, what if the, what if the place to be searched was an igloo, like an igloo cooler? And so the police officers open up the cooler, they don't, it's empty, and they close the cooler. So according to, according to that reading of Bolling, that doesn't do anything to probable cause in terms of finding something in the cooler. It does nothing. It's still the same probable cause. And that can't be what Bolling says. Well, I mean, again, these things are fact-bound and cars are different than coolers, arguably, for this purpose. Yes. Because we have this, you know, tremendous amount of experience with very innovative secret compartments in cars and vehicles and trucks and trailers and you name it. And, and so not seeing anything is less probative in this setting than it might be in an igloo cooler setting. But there, but there, in this case, there is no information that there is a secret compartment, either through missing EGAs. But that's the nature of secret compartments, really. I mean. But taking that to its logical extreme, then you have the opposite problem, right? Now, any traffic stop where there's a couple other facts that make somebody think, well, there could be drug trafficking going on here. Let me take a look into the, in here. Well, I don't find anything, but, you know, secret compartments are in cars, so I'm going to haul. And it's not just an investigation. It's seize and haul the car away. But, again, these cases all turn on their facts. Absolutely. There are an awful lot of facts here that pointed to criminality. I mean, they're, I mean, in my view. And so that distinguishes this case from, you know, the traffic stop. But even so, and I've admitted in my opening argument, that there are some facts that point to criminality and point to our police officers maybe doing further investigation, you know, surveilling them longer, doing other things, not seizing their property and taking it to the police station to be torn apart. And not, not telling a state magistrate judge what they did and didn't find. Well, but they told the judge, see, this is the last question, if I may. I mean, they told the judge about the search. I mean, it's right here, paragraphs R and T. They told it as obliquely as they could have. They said that they got consent for a search. A dog that didn't bark. I mean, we searched the vehicle and they don't say we found X. So a sentient magistrate judge is probably going to connect those dots that they didn't find anything. And so my point is, I mean, how does this preclude Lee on good faith at a minimum? If I may respond to that. So, so you have to ask yourself as a judge, had I known, you know, without the oblique reference to there was a consent search, had I known that the police officer searched the vehicle for 10 minutes and found nothing, would that have at all affected my weighing decision? I think we have to give this judge a little credit for being a little more savvy than to not figure out these things on her own. Well, the judge or the officer Leslie in this case also said there was evidence of money laundering. A probable cause to define money laundering. Well, where's the evidence of that? I don't know, but that's not really. But what I'm just saying that I don't give that magistrate and in all fairness, I'm giving the magistrate judge credit that had they been given the full information, they would have made a more rational decision. Thank you, your honors. Thank you.